Sumpter Valley Railway Co., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 13145.   Promulgated March 13, 1928.

*Blaine Hallock, Esq.,* for the petitioner.
*James L. Backstrom, Esq.,* for the respondent.

Sternhagen: The issue in this case arises from a return made by the taxpayer which discloses a net income for the taxable year 1920 of $47,869.66, and purports to disclose an invested capital of $810,000.

By the application of the excess-profits credits and the exemption, it is indicated on the return that there is an income tax of $4,586.95, but no excess-profits tax, because the amount of the income is less than the amount of the credits provided in the excess-profits tax statute.

The revenue agent thereupon, in examining this taxpayer's return and its books, made a report in which he found that instead of the income disclosed by the return of $47,869.66, the taxpayer had a net income of $49,532.81, which addition, as I understand it, came about by virtue of the adjustment of a depreciation account and of the taking of an item of expense and putting it into the items of capital expenditure.

The taxpayer makes no point whatever of the increase in the amount of net income, and I therefore find that its net income is as disclosed in the Commissioner's deficiency notice, namely, $49,532.81.

The revenue agent made a long report upon the matter of this taxpayer's invested capital, and notwithstanding the fact that the taxpayer had made no application to have its profits tax determined by the special provisions of sections 327 and 328, the Commissioner, after examining the revenue agent's report, concluded that the invested capital of the taxpayer could not be satisfactorily determined, and therefore it was within section 327 (a); namely, where the Commissioner is unable to determine the invested capital as provided in section 326, and acting under that provision he sought comparatives under section 328, and computed the tax under that section. By that computation, although the details of it are not before us, he found that there was a profits tax of $4,076.27. By virtue of that, he found that, instead of a tax of $4,586.97, which the taxpayer had already been assessed and which it had already paid, the correct tax was $8,421.92; and thus he determined a deficiency of $3,834.95. From this the taxpayer proceeded before this Board in due course.

The primary question to be considered is whether the taxpayer's invested capital can be satisfactorily determined to an extent sufficient to wipe out any excess profits tax.

The taxpayer says that he does not insist that the last dollar of invested capital to which an accurate study might show it to be entitled should be used in the determination of its tax liability, because it says that it is sufficient if it proves an invested capital of $600,000; so with that objective before him, he has introduced his proof.

Let me say, by the way, that I think the taxpayer's position, as a matter of law, to the effect that it is not necessary for it to prove all of its invested capital in order to get whatever advantage may accrue to it under section 326 is correct, and I am of the opinion that the Commissioner's position as stated at the opening of this hearing, and which I understand he still leaves to the Board to decide without necessarily urging that as his final position, is in error. I do not think that the law is, nor do I think the *Davis & Andrews case*, 2 B. T. A. 328, and other cases interpret the law to be, that a taxpayer's invested capital must be susceptible of accurate determination if section 326 is to be applied, and in order to avoid section 327. Sections 327 and 328 have been held to be relief sections, and they can not be used to impose upon a taxpayer a greater tax than he would have to pay under section 326. If a taxpayer proves that he has invested capital enough to relieve him of any excess profits tax, then the mere fact that he can not prove all of his invested capital can not be used, under sections 327 and 328, to impose an excess profits tax upon him, nevertheless, by another theory.

The question then is, what is the proper invested capital of this taxpayer, and upon that question it is necessary to consider the evidence, the burden of proof being upon the petitioner.

There is no contention made that there was actual cash bona fide paid in for stock or shares, and there is no contention made that there was intangible property of any kind paid in for stock or shares. There is a contention made that the taxpayer comes within section 326 (a) (2), and possibly section 326 (a) (3). Those sections provide that the taxpayer may include in his invested capital the actual cash value of tangible property other than cash bona fide paid in for stock or shares at the time of such payment, but in no case to exceed the par value of the original stock or shares specifically issued therefor, unless the actual cash value of such tangible property at the time paid in is shown to the satisfaction of the Commissioner to have been clearly and substantially in excess of such par value, in which case such excess shall be treated as paid-in surplus.

I do not understand that the taxpayer here claims any paid-in surplus. So that we need only to consider whether there was any tangible property paid in for stock or shares, and whether there was an earned surplus on January 1, 1920, which, together, aggregated at least $600,000. I find that there was, and I have considered all of

the evidence that has been put into the record here in finding that. I have considered the valuation report of the Interstate Commerce Commission, not because it is finally conclusive and binding upon this Board, but because the presumption is that, being a report made by an independent agency of the United States, it is presumed to be correct and impartially made. It, however, established only the valuation of January 1, 1916. There are, however, facts in connection with that valuation which, taken with the evidence of the two witnesses on the stand, are enough, perhaps, in the record to indicate that there was that amount of tangible property paid in for stock or shares or in earned surplus.

In reaching that conclusion, I have considered and eliminated any capital which may properly be regarded as borrowed capital, because I have eliminated all of the $810,000 of bonds, and it seems to me clear that you can not include as borrowed capital any more than the face value of the bonds; that is to say, the amount which is going to be paid back—$810,000 in this case.

I have taken into consideration the fact that a very substantial amount of additions and betterments was financed out of the company's own income, and if the full value of the property paid in for stock or shares, were it accurately known, could be said to be $810,000, there would then be earned surplus of some $458,000 which was represented by the additions and betterments financed out of earnings. That would leave only approximately $150,000 of property necessary to be regarded as paid in for stock or shares.

The Interstate Commerce Commission found that in 1916 the corporation had property of a value substantially in excess of the outstanding stock and bonds, and I say that, after taking into consideration the facts in respect of that depreciation account and its adjustment. The evidence showed that the Interstate Commerce Commission fixed prices of labor and materials as of 1914, or prior thereto. There is nothing in the evidence to indicate that there is any element of appreciation, and by " appreciation " I mean value, emerging in the property over and above the actual cost of it. There is no evidence that any of that is here.

There is some evidence to indicate that the value was at least as great as the cost, and there is some further evidence to indicate that the cost at the time the property was actually constructed was no less than what the Interstate Commerce Commission found to be the reproduction cost new, less depreciation.

I do not attempt to give specific weight to any one of these factors. I do not mean to say that in determining that $600,000 of property was paid in for stock or shares or was in earned surplus, I have reached that conclusion by the application of any mathematical formula. I have not reached that conclusion by the attribution to

any one of these items a weight different from any other. I refrain from saying where the emphasis should be and where the emphasis should not be, because it seems to me it is not necessary to do that. I refrain from segregating these items into their various parts and saying which is which and where they fit into this scheme of invested capital, because I do not regard that as essential to the answer in this case.

It seems to me that that is enough to make clear the mental processes that I have employed in reaching this conclusion, and it should be enough to make clear the fact that I have given careful consideration to all the evidence, and I have not omitted any of it, even though, as I indicated in the course of the trial, I thought that some of it was of little or no weight, and in one or two instances I though the weight was so utterly negligible and its relation to the problem so remote as to justify its exclusion entirely.

That really disposes of the whole case, except the application of that into a final judgment, and before proceeding let me ask counsel for the petitioner whether he has any facts that he wants found, and which he thinks I have omitted.

. Mr. HALLOCK. No, your Honor. We are entirely satisfied with your Honor's observations as constituting findings of fact. We ask no specific findings on any feature of the case.

The MEMBER. Has the representative of the respondent any requests for facts to be found?

Mr. BACKSTROM. No, your Honor, except that I think the findings of the Board should definitely give what this total amount covers, rather than a general finding as to paid-in tangible property or surplus amounting to the sum of $600,000.

The MEMBER. I find in the language of the statute that this was tangible property bona fide paid in for stock or shares or earned surplus and undivided profits, and I find that in the light of all the evidence. Now, if my finding in the light of all the evidence is not correct, then, of course, that can be tested above, but I do not regard it as necessary for me to enumerate the items and their fair values which go to make up the total of $600,000.

Mr. BACKSTROM. Perhaps I misunderstood your Honor, then. I had reference to the cash value of the tangible property and the earned surplus and undivided profits.

The MEMBER. As I say, it seems to me it is unnecessary to make that specification, because, in the aggregate, I am satisfied that there is sufficient tangible property bona fide paid in for stock or shares at the time paid in, together with paid-in or earned surplus and undivided profits, not including surplus or undivided profits earned during the year, to aggregate $600,000; so that I am finding just as much

as the taxpayer was required to find when it made its return. It did not have to make that specification. On the face of the return it simply shows invested capital, and I find that that invested capital was at least $600,000.

That being so, it seems to me there is no occasion for a Rule 50 decision; there is no occasion for taking any further time, because the amount of the judgment is readily calculable now.

I find that the net income is as found by the revenue agent, $49,532.81, from which there should be deducted the exemption for domestic corporations of $2,000, leaving the basis of the tax $47,532.81; the tax upon which, at the rate of 10 per cent, is $4,753.28. The taxpayer has already been assessed and has paid $4,586.97, which, deducted from his true tax liability, leaves an unpaid deficiency of $166.31.

A judgment for that amount against the taxpayer will enter, and a copy will be served within a very short time.

Both of you may have your exceptions, of course.

*Judgment will be entered accordingly.*